KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
John V. Berlinski, Esq. (SBN 208537)
jberlinski@kasowitz.com
2029 Century Park East
Suite 2000
Los Angeles, California  90067
Telephone: (424) 288-7900
Fax: (310) 943-3551

Eric Herschmann (*pro hac application forthcoming*)
eherschmann@kasowitz.com
Michael P. Bowen (*pro hac application forthcoming*)
mbowen@kasowitz.com
*Attorney for Perfectus Aluminum, Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| In re Seizure of Containers of Aluminum Pallets Detained at Long Beach Port, <br><br> PERFECTUS ALUMINUM, INC. <br><br> Petitioner, | Case No. 5:16-cv-02640 <br><br> **PETITION FOR EQUITABLE RELIEF AND RETURN OF PROPERTY PURSUANT TO 5 U.S.C. § 702 AND FED. R. CRIM. P. 41(g)** |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, JEH JOHNSON, in his capacity as Secretary of Homeland Security, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, SARAH SALDAÑA, in her capacity as Director of ICE, UNITED STATES CUSTOMS AND BORDER PROTECTION, R. GIL KERLIKOWSKE, in his capacity as Commissioner of CBP, and LORETTA SANCHEZ, in her capacity as Acting Port Director for the Los Angeles/Long Beach Seaport, <br><br> Respondents. | |

# PETITION

Petitioner Perfectus Aluminum, Inc. ("Perfectus"), for its petition for injunctive relief against respondents United States Department of Homeland Security ("DHS"), Jeh Johnson, in his capacity as Secretary of Homeland Security ("Johnson"), United States Immigration and Customs Enforcement ("ICE"), Sarah Saldaña, in her capacity as Director of ICE ("Saldaña"), United States Customs and Border Protection ("CBP"), R. Gil Kerlikowske, in his capacity as Commissioner of CBP ("Kerlikowske"), and Loretta Sanchez, in her capacity as Acting Port Director for the Los Angeles/Long Beach Seaport ("Sanchez," and with DHS, Johnson, ICE, Saldaña, CBP, and Kerlikowske, "Respondents"), alleges upon knowledge as to itself and otherwise upon information and belief as follows:

## NATURE OF THE ACTION

1. This is an action for equitable and injunctive relief for the return of property unlawfully detained by the defendant federal agencies. The respondents detained aluminum pallets worth approximately $25 million that are being exported by petitioner, a California company, from the port at Long Beach, California. The pallets are awaiting export packaged in 547 shipping containers stored at the loading dock, along with an additional five containers of aluminum-alloy profiles. These containers have been detained since September 2016, when respondent CBP initially detained them. Since that time, Perfectus has incurred warehousing and demurrage fees, that, to date, total over $3 million, which fees continue to accrue daily, and the shipments have remained in limbo because respondents have not commenced seizure or forfeiture proceedings, nor have they released them.

2. Petitioner has, at all times, fully cooperated with respondents. It has provided all documentation concerning the shipment and containers, which documents are in good order. Respondents, in contrast, have failed to comply with applicable federal regulations and laws, and have effected a *de facto* taking of

1 property and imposed on Perfectus a *de facto* penalty of millions of dollars, without
2 due process of law and in violation of the U.S. Constitution.

3     3.     Despite Perfectus' repeated requests for information to understand the basis for the government's detention of the goods, and repeated offers to assist the government in preserving chain-of-custody evidence or providing samples for evidentiary purposes, the government has failed to provide the notice required by its own internal regulations and minimum due process. After ignoring Perfectus' inquiries for months, the government agencies responded by stating that they are unable to provide any substantive information or even to identify a time frame in which a final decision will be made as to the disposition of the seized goods. As a result, the government has made no effort to enable Perfectus to identify and resolve any legitimate governmental issue, and instead has detained the shipments now for over 90 days – long past the 30 day period in which the government is mandated to release the property or to institute formal proceedings.

    4.     Perfectus, therefore, seeks a court order directing respondents to comply with applicable law and regulations and to release the shipments.

## JURISDICTION AND VENUE

    5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1346(a), as Respondents are agencies and employees of the United States, and Perfectus seeks equitable and injunctive relief from Respondents pursuant 5 U.S.C. § 702 and Rule 41(g) of the Federal Rules of Criminal Procedure.

    6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1), because the events giving rise to the claims described herein occurred within this District and the detained property is located within this District, and defendants are agencies and employees of the United States.

## PARTIES

    7.     Petitioner Perfectus is a California corporation with its principal place of business in Ontario, California.

8. Respondent United States Department of Homeland Security is a cabinet department of the United States government, and oversees a number of agencies including the CBP and ICE.

9. Respondent Jeh Johnson is the Secretary of the DHS.

10. Respondent United States Immigration and Customs Enforcement is a federal agency under the DHS, and is responsible for, among other things, investigating customs and trade at the country's borders.

11. Respondent Sarah Saldaña is the Director of ICE.

12. Respondent United States Customs and Border Protection is a federal law enforcement agency of the DHS.

13. Respondent R. Gil Kerlikowske is the Commissioner of CBP.

14. Respondent Loretta Sanchez is CBP's Acting Port Director for the Los Angeles/Long Beach Seaport.

**FACTS**

15. Perfectus is in the business of purchasing and distributing aluminum products, and conducts its operations out of its headquarters located in Ontario, California.

16. In conducting its business, Perfectus regularly imports and exports goods and materials to and from the United States. At all times, Perfectus has ensured that it fully complies with all applicable law and regulations concerning its business, including payment of duties and tariffs when importing or exporting goods.

17. In September 2016, Perfectus was in the process of exporting from the U.S. a shipment of Chinese aluminum "pallets" to a facility in Vietnam. The pallets are finished products and are designed to be used with forklifts for transporting crates or packaged goods, including especially food, medical or pharmaceutical goods. Among the attributes of aluminum pallets are imperviousness to infestation and resistance to weather-related rot and decomposition. Additionally, the dimensions of the aluminum pallets are sized in order to make maximum use of shipping containers

1  so that more aluminum pallets fit in standard shipping containers than wood pallets.
2  In a recent scope determination concerning anti-dumping and countervailing duties
3  applicable to certain aluminum imports from China, the U.S. Commerce Department
4  expressly declined to extend the scope of those duties to include the class of aluminum
5  pallets at issue here, which are made from a specific series of aluminum alloy
6  appropriate for use as pallets.

7       18.    Perfectus predecessor entities had imported the pallets from China in or
8  around 2012 through 2014 for the purposes of sale and lease to U.S. end users. The
9  pallets, however, never entered the stream of commerce in the U.S. due to various
10 changes in market conditions and an unsuccessful marketing strategy. In 2016,
11 Perfectus made the business decision to export the pallets to Vietnam.

12      19.    Beginning in May 2016, Perfectus began exporting the pallets, along
13 with certain aluminum-alloy profile, from various U.S. ports. From May until
14 September 2016, Perfectus had exported over 6,300 containers of aluminum pallets
15 of the same type and class as are now detained by respondents. These shipments
16 passed CBP inspection without incident.

17      20.    Last September, CBP detained 716 containers of Perfectus' export
18 shipment at Long Beach, including 569 containers of pallets and 147 containers of
19 aluminum-alloy profile.

20      21.    Those containers were being prepared for export when they were
21 detained dockside by ICE/CBP, in mid-September, 2016. This detention was effected
22 by CBP through a "customs hold for exam" notice provided to the carrier, which
23 directed the carrier not to load or to export the freight. A copy of the CBP hold notice,
24 with the heading "Detention," Booking No. CMP-1600048, and dated September 19,
25 2016 is attached hereto and incorporated herein as Exhibit A.

26      22.    Thereafter, Perfectus provided to CBP all requested documentation
27 concerning the goods awaiting export, including documents in response to a Section
28 1509 Summons, issued by DHS pursuant to 19 U.S.C. § 1509 and dated September

21, 2016. After CBP received Perfectus' documentation, it notified Perfectus that it has inspected the containers and tested samples of the aluminum pallets.

23. In early November, CBP then released 164 of the containers, 144 containing profiles and 22 containing pallets, which, after release, were exported. Of these 164 containers, 14 had been inspected (the seals had been broken and replaced by CBP), which demonstrates that CBP released this portion of the shipment based on a physical inspection of less than 10% of the containers released.

24. Around the same time as CBP released these containers, the Wall Street Journal published an article casting suspicion on Perfectus' exportation of the pallets. Among other things, the news account falsely suggested that Perfectus (or its predecessor entities) had failed to pay proper import duties on the goods and was involved in improper stockpiling of aluminum. On information and belief, the sources for this news article have been providing false and misleading information to the U.S. government concerning Perfectus' export of the aluminum pallets.

25. After this publication – and after having released 164 of the containers – DHS issued formal Detention Notice and Receipt of Custody forms, dated November 9, 2016, concerning the remaining 552 containers (copy attached as Exhibit B). The notice indicates only that DHS is conducting "lab analysis and visual inspection" of the detained aluminum products.

26. Respondents offered no explanation why the 164 containers, including 22 containers of pallets, were cleared for export while the remainder have been indefinitely detained, even though the same type of aluminum pallets are contained in both. CBP, moreover, has on other occasions inspected and released other Perfectus shipments containing the same type of aluminum pallets. To date, over 6,337 containers of aluminum pallets shipped by Perfectus have been cleared by CBP for export in 2016. Over a year ago in September 2015, a shipment of Perfectus aluminum pallets in New Jersey passed regulatory audit by CBP. And some pallets have been inspected and released for export by CBP even while the 552 containers

1 were detained at Long Beach:  Just this month, the CBP briefly detained and then released from Baltimore 31 Perfectus containers with the same type of aluminum pallets.

27. Throughout the detention period, Perfectus has repeatedly sought information from respondents about the basis for the continued detention of the remaining 552 containers of the aluminum pallets and profile awaiting export.  The respondents initially delayed responding to Perfectus' inquiries for weeks.  Even after Perfectus retained legal counsel, respondents continued to delay providing any substantive response to Perfectus' inquiries.

28. Currently, the remaining containers have been detained for more than *three months* -- far longer than 30 days from the date of the initial detention in September.  That is a violation of applicable federal regulations which, among other things, require it to provide specific information regarding the detention, or release the goods within 30 days of the date of the initial hold or detention.

29. To date, respondents have not provided any substantive reason for the continued detention, nor have they identified a time frame for a final decision concerning release or other disposition of the shipment.

30. This indefinite detention is in violation of applicable regulations and is a *de facto* taking in violation of petitioner's Fifth Amendment constitutional rights.  It also is effecting a *de facto* penalty causing Perfectus to incur significant monetary expense.

31. On a shipment with a total value of approximately $25 million, the fees incurred by Perfectus as a direct result of respondents' unlawful detention have already exceeded $3 million – over 10% of the market value of the goods.  The fees continue to accrue daily in the amount of $42,270 per diem.  That daily fee, moreover, may increase as certain negotiated discounts expire.  At this rate, the ongoing detention of the goods continues to impose costs of such a magnitude that the costs are overwhelming the value of the goods.

32. Perfectus has made repeated offers to accommodate any legitimate need by respondents to conduct further tests or inspection, including stipulating to relevant facts and providing samples for further government review. The respondents have ignored Perfectus' good faith efforts to address the government's concerns.

## CAUSE OF ACTION FOR INJUNCTIVE RELIEF

33. Petitioner repeats and realleges the foregoing paragraphs as though fully set forth herein.

34. Section 151.16 of Title 19 of the Code of Federal Regulations sets forth CBP's procedures regarding detention of goods. According to this regulation, CBP must issue a notice regarding the detention no later than five days after detention, and include details concerning (i) the initiation of the detention; (ii) the specific reason for the detention; (iii) the anticipated length of the detention; (iv) the nature of the tests or inquiries to be conducted; and (v) the nature of any information which, if supplied to Customs Service, may accelerate the disposition of the detention.

35. This regulation further requires CBP to issue a final determination with respect to the detained goods within 30 days from the date of detention.

36. CBP has failed to comply with its own procedures. Perfectus has not been given notice of the specific reason for the detention, the anticipated length of the detention, or the nature of the tests CBP is conducting. Moreover, it has been approximately three months since Perfectus' export shipment was first detained, and CBP still has not informed Perfectus of the basis for detaining the Containers, and thus has failed to provide a final determination within the 30-day period provided in Section 151.16. This failure occurred, notwithstanding Perfectus' full cooperation and pro-active efforts by Perfectus to alleviate the government's concerns.

37. Perfectus has been deprived of its goods without being afforded due process, which is an unconstitutional taking in violation of the Fifth Amendment.

38. Perfectus accordingly is entitled to injunctive relief pursuant to 5 U.S.C. § 702, including an order pursuant to 19 CFR § 151.16(i) directing respondents to release all of the remaining containers for export or into the custody of petitioner.

39. In addition, Rule 41(g) of the federal rules of criminal procedure provides as follows:

> A person aggrieved by . . . the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that the person is entitled to the lawful possession of the property. . . ..

Fed. R. Crim. P. 41(g).

40. Where, as here, criminal proceedings concerning the property in question have not been commenced, the District Court has equitable jurisdiction to adjudicate the Rule 41(g) claim as a civil proceeding, pursuant to the rules of civil procedure. *In re Seizure of $958,921 Worth of LED Televisions*, No. 13-cv-2782, 2013 WL 3490743, at *1 (C.D. Cal. May 30, 2013) (citing *U.S. v. Ritche*, 342 F.3d 903, 906 (9th Cir. 2003) and *U.S. v. Ibrahim*, 522 F.3d 1003, 1007 (9th Cir. 2008)).

41. Pursuant to this rule and applicable authorities, Perfectus is entitled to relief, including a court order directing respondents to return the detained containers and/or to release them for export. By causing substantial delay and by its unresponsiveness, the government has displayed callous disregard for the constitutional rights of petitioner; petitioner has an individual right to and need for the return of the property; petitioner will be irreparably harmed by the continued detention of the property in light of the incurred and accruing expenses, which are eroding the value of the property; and petitioner has no adequate remedy at law for redress in that petitioner's claim is specific to the property detained and respondents have failed to act as required by applicable law and regulations.[1]

---

[1] Perfectus reserves the right to pursue monetary damages pursuant to the Federal Tort Claims Act. *See* 28 U.S.C. § 2675(a); 19 CFR § 174.11. That claim for damages is for fees incurred and to be incurred and related monetary injury, and is not a substitute for the deprivation of the detained property.

42. Accordingly, relief in the form of an order directing respondents to release the detained property is warranted pursuant to Rule 41(g).

**PRAYER FOR RELIEF**

WHEREFORE, petitioner Perfectus respectfully demands judgment in its favor and against respondents, including a declaration of rights and an order directing respondents to release all of Perfectus' goods that have been detained, and such other and further relief as the Court deems just and proper.

Dated: December 27, 2016

Respectfully Submitted,

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

     /s/ John V. Berlinski     _

By:

John V. Berlinski, Esq.
2029 Century Park East
Suite 2000
Los Angeles, California, 90067
(424) 288-7900

Eric. D. Herschmann
Michael P. Bowen
Attorneys for Perfectus Aluminum, Inc.